IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| vs. | ) | Criminal No. 08-262 |
| GLENN LEE YOUNG, | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BLOCH, District Judge

Defendant, Glenn Lee Young, was indicted by a Grand Jury on July 8, 2008, and charged with one count of conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin from in and around March 2007 to on or about March 5, 2008, in violation of Title 21, United States Code, Section 846.

On April 20, 2009, the Court held a non-jury trial on the pending charge against Defendant. The government presented six witnesses: Daniel Snyder of the U.S. Drug Enforcement Agency ("DEA"); Joseph Coffay, a police officer from Wilkes-Barre, Pennsylvania; John O'Leary, a Jefferson Hills police officer and a member of a DEA drug task force; Bart Hennessy, an Allegheny County Sheriff's detective; Christian Heynes, a Brentwood police officer; and Mark Stefanowicz, a police officer from Hanover Township, Pennsylvania. Defendant presented no witnesses.

1

The matter is ripe for disposition. The Court, therefore, enters its decision pursuant to Federal Rule of Criminal Procedure 23(c). For the reasons that follow, the Court finds that Defendant, Glenn Lee Young, is guilty as charged in the Indictment of the crime of conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin, in violation of Title 21, United States Code, Section 846.

**Findings of Fact**

1. During 2007 and 2008, a DEA Drug Task Force was investigating the distribution of heroin in stamp bags labeled "Big Daddy" and "Universal." Heroin is typically distributed in "bricks," which are comprised of 50 stamp bags of the drug. A brick typically contains cutting agents and between one and two grams of heroin. Drug traffickers use scales, grinders, glassine stamp bags, tape and rubber bands to process and package the heroin. Drug traffickers use ink pads and stampers to label the bags as a means of marketing their drugs. Testimony of Daniel Snyder.

2. On December 30, 2007, police responded to a call about a robbery that had occurred in a motel room in Wilkes-Barre, Pennsylvania, that had been rented by Defendant. In the motel room, police found a suitcase containing drug paraphernalia, drug packaging materials, a grinder used for processing drugs and a letter addressed to Defendant. Testimony of Joseph Coffay; Gov't Exs. # 1-5.

2

3. As part of its investigation, the Task Force used a confidential informant and intercepted telephone calls, which confirmed that Darnell Jackson and Defendant knew each other and spoke with each other on at least thirteen occasions during January and February 2008. Testimony of John O'Leary; Gov't Ex. #6.

4. During the Task Force investigation, Officer John O'Leary acted as a monitor of intercepted telephone calls made to and from the telephone of Darnell Jackson. Officer O'Leary was familiar with Jackson and the sound of his voice. Officer O'Leary knew that Jackson lived on Margaretta Street in Braddock, Pennsylvania. Testimony of John O'Leary; Gov't Ex. #6.

5. Officer O'Leary also became familiar with the voice of the Defendant. Officer O'Leary used an intercepted telephone call of January 21, 2008, as a "baseline call" for identifying Defendant. During this call, Defendant identified himself by name and address. Testimony of John O'Leary; Gov't Ex. #6.

6. On January 2, 2008, police intercepted a telephone call between Jackson and Defendant, during which Defendant informed Jackson of the incident at the motel room in Wilkes-Barre and that police there knew he was selling drugs. Defendant also reported that he would be coming to Pittsburgh. Testimony of John O'Leary; Gov't Ex. #6.

7. On January 13, 2008, police intercepted a telephone call between Jackson and Defendant, during which they discussed

3

whether Defendant should come to Pittsburgh to distribute six bricks of heroin. Jackson told Defendant that he "might grab two or three off of you." Testimony of John O'Leary; Gov't Ex. #6.

8. In a telephone conversation recorded on January 21, 2008, Defendant and Jackson discussed sending an item to "Glenn Young" in "Wilkes-Barre." Testimony of John O'Leary; Gov't Ex. #6.

9. In a telephone conversation recorded on January 24, 2008, Young reported that he was in Monroeville, Pennsylvania, and was going to see "Dickie" to "get Dickie one." Testimony of John O'Leary; Gov't Ex. #6.

10. In a telephone conversation recorded on February 4, 2008, Jackson told Defendant that he "had people waitin'." Defendant told Jackson: "Yeah, hold your shit. I'm comin' bro, I'm comin'. Tell your people I'm comin', man." Testimony of John O'Leary; Gov't Ex. #6.

11. On February 5, 2008, Defendant called Jackson to report that he was in Pittsburgh. Two hours later, Jackson called Larry Brooks and told him that "them things . . . is in." Jackson informed Brooks that the name of "them things" was "Big Daddy." Later that evening, Defendant told Jackson that he was on his way home and that he intended to leave "most of it" with Jackson and "just take two with me." Testimony of John O'Leary; Gov't Ex. #6.

12. In a telephone conversation recorded on February 6, 2008, Jackson reported to Defendant that a person who received

4

heroin the previous day was satisfied and would probably want to get more. Testimony of John O'Leary; Gov't Ex. #6.

13. On February 9, 2008, Defendant directed Jackson to "take Dickie a brick." Defendant told Jackson that "Dickie" was at the Family Dollar store in Braddock. Testimony of John O'Leary; Gov't Ex. #6.

14. After meeting with a black male at the Family Dollar store, Richard Morton was followed by Detective Bart Hennessy as he drove to Brentwood, Pennsylvania. Detective Hennessy lost sight of the vehicle. When Detective Hennessy next saw the vehicle, a Brentwood Police unit had made a traffic stop. Testimony of Bart Hennessy.

15. Brentwood Police Officer Christian Heynes was instructed to watch for Morton's car. After he saw Morton commit moving violations, Officer Heynes stopped the vehicle. After Morton consented to a search of his vehicle, Officer Heynes found a brick of heroin in bags stamped "Big Daddy." Testimony of Christian Heynes. The parties stipulated that the substance seized from Morton contained 1.43 grams of heroin.

16. In a telephone call recorded the next day, February 10, 2008, Defendant told Jackson that after "Dickie" left the meeting with Jackson in Braddock, "Dickie" had been arrested. Defendant stated that "he got caught with the brick, cuz." Testimony of John O'Leary; Gov't Ex. #6.

17. On March 13, 2008, Hanover Township Police Officer Mark Stefanowicz stopped Defendant's car after observing a traffic violation. Defendant consented in writing to the search of the apartment he shared with Michelle Ward. In Defendant's bedroom, Officer Stefanowicz found drug paraphernalia, including a scale, a grinder, and bags stamped "Big Daddy" and "Empire." Testimony of Mark Stefanowicz; Gov't Exs. #7-11.

**Conclusions of Law**

1. In order to establish the existence of a conspiracy, the government must prove that such an agreement existed between two or more people, that the defendant knew the purposes of that agreement, and that the defendant deliberately joined the agreement with the intent to further its unlawful purpose. United States v. Mastrangelo, 172 F.3d 288, 291-92 (3d Cir. 1998). "This proof incorporates a demonstration that a defendant has 'knowledge of the illegal objective contemplated by the conspiracy.'" Id. (quoting United States v. Wexler, 838 F.2d 88, 91 (3d Cir. 1988)).

2. Based on the findings of fact as set forth herein, the Court concludes beyond a reasonable doubt that Defendant and Jackson shared a unity of purpose and intended to achieve their common goal. Their purpose and goal was to possess with intent to distribute and to distribute heroin. They agreed to help each other possess with intent to distribute and to distribute heroin.

3. During January and February 2008, a period of time within the date range of the Indictment, Defendant agreed to supply and did supply heroin to Jackson. During this same time period, Jackson agreed to distribute and did distribute the heroin that Defendant had supplied. These actions were a product of their agreement, their unity of purpose and their goal.

4. In addition, two acts not charged in the Indictment in this case point to the existence of a conspiracy. The drug paraphernalia found during the December 30, 2007, incident in Defendant's Wilke-Barre motel room and during the March 13, 2008, search of Defendant's bedroom, including at least one bag stamped "Big Daddy," is direct evidence of the drug conspiracy in this case and is admissible to prove that conspiracy. United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) ("Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense."). On these two occasions, Defendant possessed the type of drug paraphernalia that is indicative of trafficking, including at least one "Big Daddy" bag. Defendant also reported the motel room incident to Jackson, which indicates that they understood the nature of Defendant's drug-related activities and shared a unity of purpose. In addition, in his conversation with Larry Brooks, Jackson reported that the heroin he was going to

receive from Defendant was branded "Big Daddy." This is additional proof that Jackson and Defendant agreed to distribute heroin and intended to achieve that end. See United States v. Bobb, 471 F.3d 491, 497-98 (3d Cir. 2006).

5. Given the totality of the circumstances in this case, the Court finds that the Government has proven beyond a reasonable doubt that Glenn Lee Young was an active participant in the conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin.

6. For all of the foregoing reasons, the Court finds that Defendant, Glenn Lee Young, is guilty as charged in the Indictment of the crime of conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin, in violation of Title 21, United States Code, Section 846.

An appropriate Order follows.

s/Alan N. Bloch
United States District Judge

Date:   April 21, 2009

ecf:    Counsel of record